IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Tiffany Sigler, | ) |
|         Plaintiff, | )    Civil Action No.: 3:20-cv-02203-JMC |
| v. | )    **ORDER AND OPINION** |
| Black River Electric Cooperative, Inc., | ) |
|         Defendant. | ) |

Plaintiff Tiffany Sigler ("Plaintiff") brought this action against her former employer, Defendant Black River Electric Cooperative, Inc. ("Defendant" or "Black River"), claiming Defendant retaliated against her after taking leave under the Family and Medical Leave Act ("FMLA") and defamed her. (*See* ECF No. 1-1 at 7-8.) This matter is before the court upon review of Defendant's Objections (ECF No. 16) to the Report and Recommendation issued by the Magistrate Judge ("Report") (ECF No. 15). The Report recommended that the court grant in part and deny in part Defendant's Motion to Dismiss and deny Defendant's Motion to Strike. (*Id.* at 15.)

For the reasons set forth below, the court **ACCEPTS** the Report and Recommendation of the Magistrate Judge and adopts the findings herein (ECF No. 15), **GRANTS** in part and **DENIES** in part Defendant's Motion to Dismiss and **DENIES** Defendant's Motion to Strike (ECF No. 7), **DISMISSES** without prejudice Plaintiff's Second Cause of Action for defamation[1] (*see* ECF No. 1-1 at 8), and **ORDERS** that Plaintiff is authorized to amend the Complaint within fourteen (14) days of the entry of this Order regarding her defamation claim.

---

[1] Plaintiff's First Cause of Action for retaliation remains. (*See* ECF No. 1-1 at 7-8.)

1

## I. FACTUAL AND PROCEDURAL BACKGROUND[2]

Plaintiff began working at Black River in 2007. (ECF No. 15 at 2.) Over a decade later on July 24, 2017, "Plaintiff was involved in a serious car accident, and, as a result, suffered head trauma, muscle tension, and neurological symptoms." (*Id.*) Upon advice from her physician, Plaintiff obtained the appropriate FMLA paperwork and submitted it to Black River in order to take time off from work. (*Id.*) Black River denied Plaintiff's request for FMLA leave twice, even though Plaintiff provided the necessary paperwork, and only approved such leave after speaking directly with Plaintiff's physician. (*Id.*)

On August 9, 2017, Plaintiff's direct supervisor Patricia Davis informed Plaintiff she needed to be at work the next day. (*Id.* at 3.) Yet upon Plaintiff's arrival the following morning, Davis sent Plaintiff home after seeing her condition. (*Id.*) Plaintiff ultimately returned to work in September 2017. (*Id.*) On September 19, 2017, within one week of her return, "she received a performance awareness write-up about an issue that allegedly occurred in February 2016, eighteen months prior, and shortly after Plaintiff began working in the Member Service Department." (*Id.*) Plaintiff insists that "[the September 2017] write-up was the first of several pretextual write-ups Plaintiff received after she returned from FMLA leave. Many of these write-ups and disciplinary actions were based on the training Plaintiff received from her supervisor, Davis, or were mistakes that Davis herself made." (ECF No. 1-1 at 2-3.)

In April 2019, "Vice President of Finance[] Betty Welsh . . . sent Plaintiff a memorandum about an arrangement Plaintiff had made on a customer's account." (ECF No. 15 at 3.) Plaintiff subsequently met with Welsh

---

[2] The Report sets forth the relevant facts and legal standards, which this court incorporates herein without a full recitation. The following facts are taken in the light most favorable to Plaintiff.

2

> and explained she had been trained by Davis to make such arrangements, Davis made the same arrangements, and Plaintiff was able to produce a report supporting her explanation. Plaintiff expressed to Welsh that she felt as though she was being treated differently from her coworkers and that she had been experiencing this treatment since she returned from her FMLA leave. Plaintiff informed Welsh her coworkers advised her they had been informed by Davis not to talk to Plaintiff or ask her for help. A coworker told Plaintiff she was tasked to review Plaintiff's accounts for mistakes.

(*Id.* at 3-4 (internal citations omitted).) Relatedly, within this timeframe Plaintiff claims her "workload increased significantly, and she assisted more customers than any other employee. Davis also asked Plaintiff on numerous occasions to complete Davis's work when she was out of the office." (*Id.* at 4 (internal citations omitted).)

In October 2019, Plaintiff informed Human Resources Administrator Shavon White "that she was being mistreated in comparison to other employees. Plaintiff subsequently received a negative performance evaluation in October 2019. Plaintiff was notified that her employment was terminated effective December 30, 2019. A coworker informed Plaintiff that White had stated Plaintiff's termination was 'something in the works for two years.'" (*Id.* (internal citations omitted).)

Plaintiff brought the Complaint in May 2020, claiming retaliation under the FMLA and defamation against Defendant based on the above events. (ECF No. 1-1 at 5-6.) Defendant removed the case to federal court in June 2020 (ECF No. 1) and, shortly thereafter, filed the instant Motion to Dismiss and to Strike (ECF No. 7). Plaintiff filed a Response (ECF No. 10), to which Defendant replied (ECF No. 11).

The Magistrate Judge issued the Report in July 2020, suggesting the Motion to Dismiss be granted in part and denied in part, and the Motion to Strike be denied. (ECF No. 15.) Specifically, the Magistrate Judge found the FMLA retaliation claim should survive because Plaintiff had sufficiently alleged

3

she engaged in protected activity by taking FMLA leave . . . and that, upon her return from FMLA leave, she was written up almost immediately and then again multiple times over the course of years, including a disciplinary action and poor performance evaluation, eventually leading to her termination, and that she was informed her termination had been "in the works" since she took FMLA leave.

(*Id.* at 5-6.) Next, the Magistrate Judge suggested dismissing Plaintiff's defamation claim because at least some of the underlying supportive allegations were not false or defamatory.[3] (*Id.* at 9-10.) Further, the Magistrate Judge pointed out that other allegations "lack[ed] the necessary specificity to state a claim for defamation" and were "protected by a qualified privilege because they concern[ed] Plaintiff's job performance and were made in good faith and in the usual course of business." (*Id.* at 11 (citation and internal marks omitted).) Lastly, the Magistrate Judge declined to strike certain terms and narrow statements within the Complaint, as Defendant "fail[ed] to show that it has suffered any harm or prejudice, much less significant prejudice, from Plaintiff's allegations."[4] (*Id.* at 15.)

In response to the Report, Defendant filed Objections contending that the Magistrate Judge erred by finding the FMLA retaliation claim should survive. (*See* ECF No. 16.) Defendant particularly takes issue with the purported causal connection between Plaintiff's protected activity and her firing, claiming "the Magistrate Judge has taken liberty with Plaintiff's factual allegations and inferred a causal connection where none exists[.]" (*Id.* at 2.) Plaintiff filed a Reply to these Objections (ECF No. 17), to which Defendant filed a Sur Reply (ECF No. 18).

## II. JURISDICTION

This court has jurisdiction over Plaintiff's FMLA claim via 28 U.S.C. § 1331, as the claim arises under a law of the United States, and also pursuant to 29 U.S.C. § 2617(a)(2), which provides

---

[3] Plaintiff did not object to the Magistrate Judge's dismissal of her defamation claim.
[4] Defendant did not object to the denial of its Motion to Strike.

that an action under the FMLA may be maintained "against any employer (including a public agency) in any Federal or State court of competent jurisdiction[.]" *Id.* Additionally, the court has supplemental jurisdiction over Plaintiff's state law claim because it is "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367 (1990).

### III. STANDARD OF REVIEW

A. Report and Recommendation

The Magistrate Judge's Report and Recommendation is made in accordance with 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.02 for the District of South Carolina. The Magistrate Judge only makes a recommendation to this court. *See Mathews v. Weber*, 423 U.S. 261, 270-71 (1976). The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the court. *Id.* The court reviews *de novo* only those portions of the Report and Recommendation to which specific objections are filed. *See Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005). The court reviews those portions which are not specifically objected to only for clear error. *Id.* at 316. The court may accept, reject, or modify, in whole or in part, the Magistrate Judge's recommendation or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

The court is charged with making the final determination of the pending matter as the Magistrate Judge's recommendation carries no presumptive weight. *See Mathews v. Weber*, 423 U.S. 261, 270-71 (1976). As such, the court reviews *de novo* those portions of the Report to which specific objections are made. *See* 28 U.S.C. § 636(b)(1); *see also* FED. R. CIV. P. 72(b)(3). Yet when no party offers timely, specific objections, the court "need not conduct a *de novo* review, but instead must only satisfy itself that there is no clear error on the face of the record . . . to accept

the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (quoting FED. R. CIV. P. 72 advisory committee's note); *see Camby v. Davis*, 718 F.2d 198, 199 (4th Cir. 1983) (stating the court is not required to explain the Report's adoption if no party offers specific objections).

    B.  Motion to Dismiss

A Rule 12(b)(6) motion for failure to state a claim upon which relief can be granted "challenges the legal sufficiency of a complaint." *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009) (citations omitted); *see also Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) ("A motion to dismiss under Rule 12(b)(6) . . . does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."). To be legally sufficient, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).

A Rule 12(b)(6) motion "should not be granted unless it appears certain that the plaintiff can prove no set of facts which would support its claim and would entitle it to relief." *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). When considering a Rule 12(b)(6) motion, the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff. *Ostrzenski v. Seigel*, 177 F.3d 245, 251 (4th Cir. 1999).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (*citing Twombly*, 550 U.S. at 556). Courts commonly refer to this as the *Twombly/Iqbal* standard for federal pleadings, which a

plaintiff needs to overcome to survive a Rule 12(b)(6) dismissal. *Brown-Thomas v. Hynie*, 412 F. Supp. 3d 600, 605 (D.C. 2019).

## IV. DISCUSSION

Defendant disputes that a sufficient causal connection exists between Plaintiff's 2017 FMLA leave and her 2019 termination to support her FMLA retaliation claim. Black River specifically objects to the Magistrate Judge's finding "that [disciplinary actions] occurred immediately' after Plaintiff's return from FMLA leave and 'then again multiple times over the course of years.'" (ECF No. 16 at 3.) Instead, Defendant points out that "Plaintiff merely claims she received 'several' write-ups and then proceeds to immediately discuss a disciplinary action she suffered in 2019, nearly two years after her return from FMLA. Plaintiff's Complaint makes no distinction between the 'several' disciplinary actions she received and the actual disciplinary actions detailed in her Complaint." (*Id.* at 3.) Likewise, Defendant insists Plaintiff's co-worker's statement that her termination had been "in the works" for two years did "not establish the needed adverse actions from September of 2017 until Plaintiff's termination in December of 2019 to sufficiently plead that her use of FMLA leave was the cause of her termination over two-and-a-half years later." (*Id.* at 4.)

The FMLA establishes two types of claims: "(1) interference claims, in which an employee asserts that his employer denied or otherwise interfered with his substantive rights under the Act; and (2) retaliation claims, in which an employee asserts that his employer discriminated against him because he engaged in activity protected by the Act." *Gleaton v. Monumental Life Ins. Co.*, 719 F. Supp. 2d 623, 633 n.3 (D.S.C. 2010) (internal citation omitted). At issue is whether Defendant retaliated against Plaintiff. To establish a claim for retaliation under the FMLA, Plaintiff must demonstrate that "he engaged in protected activity, that the employer took adverse

7

action against him, and that the adverse action was causally connected to the plaintiff's protected activity." *Yashenko v. Harrah's NC Casino Co.*, 446 F.3d 541, 551 (4th Cir. 2006) (internal citation omitted). As noted above, Defendant objects to the Magistrate Judge's finding that Plaintiff sufficiently pled a causal connection.

Here, in the light most favorable to Plaintiff, and accepting all well-pled allegations as true, the court finds Plaintiff has sufficiently pled a causal connection between her FMLA leave and termination. Plaintiff alleges that "[the September 2017] write-up was the first of *several* pretextual write-ups Plaintiff received after she returned from FMLA leave. *Many* of these write-ups and disciplinary actions were based on the training Plaintiff received from her supervisor, Davis, or were mistakes that Davis herself made." (ECF No. 1-1 at 2-3 (emphasis added).) Plaintiff's allegations then jump to 2019, wherein she received a memo from Welsh in April 2019 and a negative performance review in October 2019.

The court finds Plaintiff's allegation that, after September 2017, she received "several" write-ups, with "many of these write-ups and disciplinary actions" stemming from Davis, plausibly establishes a series of retaliatory incidents leading up to 2019. Moreover, despite Defendant's insistence to the contrary, it is reasonable to infer from the wording of Plaintiff's allegations that such incidents went beyond the two particular disciplinary instances Plaintiff asserts occurred in 2019. *Mylan Labs., Inc.*, 7 F.3d at 1134 (A Rule 12(b)(6) motion "should not be granted unless it appears certain that the plaintiff can prove *no* set of facts which would support its claim and would entitle it to relief" (emphasis added)). Such allegations, along with the statement of Plaintiff's co-worker that her termination had been "in the works" for two years, sufficiently plead a causal connection at this stage in the litigation. The court therefore overrules Defendant's objections.

Lastly, the court observes that neither party has otherwise objected to the Report, and the court discerns no clear error on the face of the record. Accordingly, the court dismisses the defamation claim without prejudice, denies the Motion to Dismiss the FMLA retaliation claim, denies the Motion to Strike, and authorizes Plaintiff to file an amended complaint regarding her defamation claim.[5] (ECF No.7.)

## V. CONCLUSION

For the reasons discussed above, the court **ACCEPTS** the Report and Recommendation of the Magistrate Judge and adopts the findings herein (ECF No. 15), **GRANTS** in part and **DENIES** in part Defendant's Motion to Dismiss, and **DENIES** Defendant's Motion to Strike (ECF No. 7). The court **DISMISSES** without prejudice Plaintiff's Second Cause of Action for defamation.[6] (*See* ECF No. 1-1 at 8.) Lastly, the court **ORDERS** that Plaintiff is authorized to amend the Complaint within fourteen (14) days of the entry of this Order regarding her defamation claim.

**IT IS SO ORDERED.**

*J. Michelle Childs*
United States District Judge

March 8, 2021
Columbia, South Carolina

---

[5] Plaintiff requested leave to amend if the court concluded her retaliation or defamation claims were deficiently pled. (ECF No. 10 at 14.) The Magistrate Judge found Plaintiff's defamation claim was deficient and suggested granting the request to amend the Complaint. (ECF No. 15 at 15.) Defendant has not objected to this recommendation, and the court finds such an amendment would be appropriate according to Federal Rule of Civil Procedure 15(a)(2). *See Drager v. PLIVA USA, Inc.*, 741 F.3d 470, 474 (4th Cir. 2014) ("[T]he grant or denial of an opportunity to amend is within the discretion of the district court." (citations and internal marks omitted)).

[6] Plaintiff's First Cause of Action for retaliation remains. (*See* ECF No. 1-1 at 7-8.)